**William MILLER, Plaintiff,**

**v.**

**CITY OF BOSTON, Longwood Security Services, Neil Sicard; Dennis Bradbury, Daniel Amorim, Villa Victoria, and Maloney Properties, Inc., Defendants.**

Civil Action No. 07–12076–JLT.

United States District Court,
D. Massachusetts.

Nov. 19, 2008.

Anthony E. Abeln, Scott D. Burke, Morrison Mahoney LLP, Alexandra B. Alland, City of Boston Law Department, Boston, MA, for Defendants.

*MEMORANDUM*

TAURO, District Judge.

Plaintiff William Miller brings this § 1983 action against Longwood Security Services ("Longwood") and the City of Boston ("the City") along with other Defendants for injuries Plaintiff sustained in his May 25, 2007 arrest. Plaintiff alleges

that he was outside 65 West Dedham Street in Boston when he was arrested by three Longwood employees: Officers Neil Sicard, Daniel Amorim, and Sgt. Dennis Bradbury.[1] The three Longwood Security employees had all been licensed as "special police officers" of the City of Boston.[2] The Complaint alleges that the officers denied Plaintiff equal protection by assaulting him and manufacturing charges against him.[3] Plaintiff further states that he suffered head and eye injuries as a result of the alleged assault.[4]

Presently at issue is the City of Boston's *Second Motion to Dismiss* [# 37] for failure to state a claim. The City of Boston offers two grounds for dismissing Plaintiff's Complaint against the City: (1) the City is not liable for the acts of licensed special officers;[5] and (2) the Complaint does not plead sufficient facts to establish municipal liability under § 1983.[6] For the following reasons, the motion is ALLOWED.

## I. *City Liability for Special Officer Misconduct*

■ The City first argues that it is never liable for the misconduct of special officers. The only authority the City offers for this assertion is the text of the 1898 statute giving the City authority to license these special officers and virtually identical language in a corresponding police department rule.[7] The statute gives licensed special officers "the power of police offi-

cers to preserve order and to enforce the laws and ordinances of the city."[8] The statute goes on to state that "the corporation or person applying for an appointment under this section shall be liable for the official misconduct of the officer."[9] BPD argues that because the statute makes the special officers' employer liable for their misconduct, the City cannot be liable.[10]

The mere fact that the statute holds the employer of special officers liable, however, does not necessarily mean that the City may not also be held liable for the misconduct of special officers. Under the terms of the statute, special officers are granted the "power of police officers." Inasmuch as the statute grants special officers the authority of police officers, it seems logical to treat them as such for purposes of the City's liability. Because Plaintiff's complaint is deficient in other respects, however, this court assumes without deciding that the City may be held liable for special officer misconduct to the same extent as it may be liable for the misdeeds of other city employees.

## A. *City Liability under Section 1983*

■ A municipality cannot be held liable in a § 1983 action on a simple respondeat superior theory alone.[11] In *Monell*, the Supreme Court held that a municipality is only liable under § 1983 if the plaintiff proves that an official government policy or custom directly caused

1. *See* Compl. ¶ 4.

2. Def.'s Mem. Supp. Mot. Dismiss 4.

3. *See* Compl. ¶ 6.

4. *See id.* ¶ 4.

5. Def.'s Mem. Supp. Mot. Dismiss 3.

6. *Id.* 5.

7. *See id.* 4–5.

8. St. 1898 ch. 282 § 2.

9. *Id.*

10. *See id.*

11. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

8

the constitutional violation.[12] A "single incident of unconstitutional activity" is generally not enough unless there is proof that the "policy can be attributed to a municipal policymaker."[13]

The Supreme Court has left open whether a theory of inadequate training of police officers can ever amount to a "policy" causing police officers to use excessive force, but the Court has held that more than one episode of police violence is required.[14] A municipality can only be liable for a "failure to train" officers if the failure " 'amounts to *deliberate indifference* to the rights of persons with whom the police come into contact,' and is 'closely related' to ... the constitutional injury."[15] To survive a Rule 12(b)(6) motion to dismiss, a § 1983 claim against a municipality for failure to train police officers must assert a "sufficient basis for concluding that [city] policymakers reasonably should have anticipated that a new police [officer] would need specialized instruction" in the activity.[16] The complaint must allege that the City: (1) knew when it hired the officer that the risk of excessive force was obvious; or (2) later learned of the risk but took no steps to provide adequate training.[17]

Here, Plaintiff has simply alleged that the officers violated his civil rights by using excessive force in an apparently isolated incident. The Complaint does not identify an official City policy that immed-ately caused the constitutional violation in question. Even if Plaintiff had alleged a failure to train the special officers, he nowhere alleges that the City had reason to know that the special officers posed a risk. Absent more specific allegations of an egregious failure on the part of the City to train the special officers, Plaintiff's Complaint is insufficient to state a claim for municipal liability under § 1983.[18]

Plaintiff has instead argued that the unconstitutional "policy" is the City's position that it is not liable for the misconduct of special officers to the same extent that it is liable for wrongs committed by regular police officers. But the City's argument during this litigation concerning its liability does not constitute an official policy that directly caused Plaintiff's alleged constitutional injury. Disregarding the City's reading of the statute for present purposes and treating the Longwood employees as ordinary officers, this apparently isolated incident of officer wrongdoing is still not a sufficient basis for municipal liability under *Monell.*

Because Plaintiff fails to allege a specific policy that caused the constitutional violation at issue, the City of Boston's *Second Motion to Dismiss* [# 37] is ALLOWED. AN ORDER HAS ISSUED.

---

12. *Id.* at 694, 98 S.Ct. 2018.

13. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

14. *See id.* at 824, 105 S.Ct. 2427.

15. *Hayden v. Grayson,* 134 F.3d 449, 456 (1st Cir.1998) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

16. *Id.* at 457.

17. *Chaabouni v. City of Boston,* 133 F.Supp.2d 93, 99 (D.Mass.2001).

18. *See Schuurman v. Town of North Reading,* No. 90–10692 MLW, 1995 WL 464915, at *5–6 (D.Mass. June 15, 1995) (holding that a "cursory" reference in the complaint to a failure to train and facts indicating that the town failed to provide special officers with a copy of newly implemented training guidelines were insufficient to impute § 1983 liability to the town).